IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Myron Williams,                          :
                        Appellant        :
                                         :
            v.                           :
                                         :
Commonwealth of Pennsylvania,            :
Department of Transportation,            :   No. 2048 C.D. 2014
Bureau of Driver Licensing               :   Submitted:  October 2, 2015


BEFORE:   HONORABLE DAN PELLEGRINI, President Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
PRESIDENT JUDGE PELLEGRINI                 FILED: October 23, 2015


            Myron Williams (Williams) appeals from an order of the Court of
Common Pleas of Philadelphia County (trial court) upholding the Department of
Transportation's (Department) suspension of his driving privilege and lifelong
disqualification of his commercial driving privilege for refusing a chemical test
pursuant to 75 Pa. C.S. §1547(b).  For the reasons that follow, we affirm the trial
court's order.


                                   **I.**

            Williams appealed the Department's one-year suspension of his
personal driver's license and lifelong disqualification of his commercial driving

license[1] pursuant to 75 Pa. C.S. §1547(b)(1)(i)[2] after he refused a chemical breathalyzer test, contending that the police did not have reasonable grounds to request that he submit to a chemical test to determine his blood alcohol content.

## II.

Before the trial court, the Department presented the testimony of John Hellings, a Philadelphia police officer. He testified that at about 1:30 a.m. on March 16, 2014, he observed Williams driving westbound on Jefferson Street toward the intersection of Jefferson and 63rd Streets, where his police cruiser was parked while on patrol. Officer Hellings testified that he directed his attention to

---

[1] Williams was previously charged with violating 75 Pa. C.S. §3802(b), which pertains to operating a motor vehicle with a blood alcohol concentration of between 0.10% and 0.16%. Where an individual is convicted of two or more DUI incidents, is the subject of two or more test refusals, or a combination of the two, lifetime disqualification of a commercial driver's license is required. *See* 75 Pa. C.S. §1611(c).

[2] 75 Pa. C.S. §1547(b)(1)(i) sets forth the following penalties regarding a driver or operator of a motor vehicle who refuses to consent to chemical testing to determine his alcohol content:

> (b) Suspension for refusal.--
>
>   (1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:
>
>     (i) Except as set forth in paragraph (ii), for a period of 12 months.

75 Pa. C.S. §1547(b)(1)(i).

the vehicle when he heard a grinding noise and noticed that the vehicle was damaged. He recalled, "[t]he tire was mostly missing. There w[ere] just shreds of rubber left." (Certified Record, Trial Court Hearing Transcript, at 8.) The vehicle then came to a stop about a half-block away from Officer Hellings and went into reverse, eastbound in the westbound lanes of 6200 Jefferson Street and then made a left-hand turn, heading southbound on the 1600 block of Felton Street. Officer Hellings testified that he caught up to the vehicle, which was travelling at a high rate of speed, and activated his sirens and lights to pull it over with regard to the defective tire, after which "the vehicle immediately pulled to the left and struck two parked vehicles" before coming to a stop. (*Id.* at 9.)

Officer Hellings stated that he stopped his vehicle a few feet behind the vehicle being operated by Williams and began to approach, but because the vehicle was still in contact with the parked cars, he had to go around to the passenger's side of the car. As he continued around the front of the vehicle, it began to move forward, and Office Hellings drew his weapon, instructing Williams to stop the vehicle. Williams then put the vehicle in reverse and backed up, striking the police car's front bumper without causing any physical damage.

Officer Hellings approached the vehicle and noted that there was also a female in the front passenger seat. Regarding Williams's physical condition, Officer Hellings testified that Williams exhibited poor, wobbly balance, a "strong odor of alcohol coming from his breath," and bloodshot eyes. (*Id.* at 11.) Although Williams initially refused to provide his name or date of birth and did not have a driver's license on his person, he later cooperated, and Officer Hellings

3

placed him under arrest for the suspicion of driving under the influence and transported him to the police station for a breathalyzer test.

On cross-examination, Officer Hellings admitted that at the time he observed Williams's vehicle and front tire, it was dark out but emphasized the presence of street lights. He further conceded that Williams backed up safely when he realized he could not proceed in light of the patrol car blocking the intersection. He also stated that seconds after he turned on his lights and siren, the vehicle being operated by Williams struck the two parked vehicles on Felton Street. Additionally, he explained that he did not record Williams's contact with the police cruiser because he had enough support for the arrest without noting this incident and was not trying to add additional charges, although he did notate that Williams "tapped" his car. (*Id.* at 31−32.)

The Department also called Jeffrey Hannan, a police officer assigned to the Accident Investigation Division (AID), who stated that his duties include performing chemical testing on DUI suspects. He recalled that after Williams arrived at the station, he read to Williams verbatim the warnings contained in the *O'Connell* form[3] and the "Report of Chemical Tests for Defendants Charged with

---

[3] This document provides in pertinent part:

> 1. The Constitutional rights you have as a criminal defendant, commonly known as the Miranda rights, including the right to speak with a lawyer and the right to remain silent, apply only to criminal prosecutions and do not apply to the chemical testing procedure under Pennsylvania's Implied Consent Law, which is a civil, not a criminal proceeding.

**(Footnote continued on next page…)**

4

3802 V.C.,"[4] both of which Williams signed.  *See Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 555 A.2d 873 (Pa. 1989).

_____

**(continued…)**

> 2. You have no right to speak to a lawyer, or anyone else, before taking the chemical test requested by the police officer, nor do you have a right to remain silent when asked by the police officer to submit to the chemical test.  Unless you agree to submit to the test requested by the police officer, your conduct will be deemed to be a **refusal** and your operating privilege will be suspended for at least one year.  In addition, if you refuse to submit to a chemical test and you are convicted of, plead to, or are adjudicated delinquent with respect to violating Section 3802(a) of the Pennsylvania Vehicle Code, because of the refusal, you will be subject to more severe penalties set forth in Section 3804(c) of the Pennsylvania Vehicle Code, which will include the following:  for a **First** offender, a minimum of **72 hours** in jail and a minimum fine of **$1,000.00**; for a **Second** offender, a minimum of **90 days** in jail and a minimum fine of **$1,500.00**; for a **Third or Subsequent** offender, a minimum of **1 year** in jail and a minimum fine of **$2,500.00.**

(Reproduced Record [R.R.] at 113a (emphasis in original)).

[4] With respect to the warnings to be orally administered by the police, this document provides:

> Please be advised that you are under arrest for driving under the influence of alcohol or controlled substance in violation of Section 3802 of the Pennsylvania Vehicle Code.
>
> I am requesting you to submit to a chemical test to determine the alcohol concentration or the presence of controlled substance in your blood system.  Chemical testing may consist of one or more tests of breath, blood and/or urine.
>
> It is my duty, as a police officer, to inform you that if you refuse to submit to the chemical testing, your operating privilege (i.e. Driver's License) will be suspended for at least one year.  In

**(Footnote continued on next page…)**

Additionally, he read the "Section 1547 Chemical Testing Warnings" on the DL-26 form to Williams, who refused to sign this form, explaining that as a commercial driver, he could not afford another DUI.[5]

---

**(continued…)**

addition, if you refuse to submit to a chemical test and you are convicted of, plead to, or are adjudicated delinquent with respect to violating Section 3802(a) of the Pennsylvania Vehicle Code, because of your refusal, you will be subject to more severe penalties set forth in Section 3604(c) of the Pennsylvania Vehicle Code, which include a minimum of 72 hours in jail and a minimum fine of $1,000.00.

It is also my duty, as a police officer, to inform you that you have no right to speak to an attorney or anyone else before deciding whether to submit to testing and any request to speak to an attorney or anyone else after being provided these warnings or remaining silent when asked to submit to chemical testing will constitute a refusal resulting in the suspension of your operating privilege and other enhanced criminal sanctions if you are convicted of violating Section 3802(a) of the Pennsylvania Vehicle Code.

Upon completion of the Police Department's chemical testing you have the right to have a physician of your own choosing administer independent chemical testing in addition to the chemical testing already completed.

(*Id.* at 114a.)

[5] These warnings instruct:

1. You are under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code.

2. I am requesting that you submit to a chemical test of breath….

**(Footnote continued on next page…)**

On cross-examination, Officer Hannan stated that he was not informed that Williams struck a patrol car, and had he been, he would have noted it. He recalled that Williams had an odor of alcohol on his breath but was polite, well-spoken and well-dressed and did not have balance issues. He could not remember whether his eyes were bloodshot. He further explained that any time that a Philadelphia patrol car is involved in an accident, AID must be notified and perform an investigation, regardless of the amount of resultant damage.

---

**(continued…)**

> 3. If you refuse to submit to the chemical test, your operating privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of driving under the influence, you will be suspended for up to 18 months. In addition, if you refuse to submit to the chemical test, and you are convicted of violating Section 3802(a)(1) (relating to impaired driving) of the Vehicle Code, then, because of your refusal, you will be subject to more severe penalties set forth in Section 3804(c) (relating to penalties) of the Vehicle Code. **These are the same penalties that would be imposed if you were convicted of driving with the highest rate of alcohol, which include a minimum of 72 consecutive hours in jail** and a minimum fine of $1,000.00, up to a maximum of five years in jail and a maximum fine of $10,000.00.

> 4. You have no right to speak with an attorney or anyone else before deciding whether to submit to testing. If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to chemical testing, you will have refused the test.

(*Id.* at 118a (emphasis in original)).

7

Williams testified in support of his appeal, stating that on the night in question, he was heading westbound on Jefferson Street, on his way home with his girlfriend, when he observed a police car in the distance, obstructing his path. Understanding that he could not proceed farther, Williams stated that he decided to turn left onto Felton Street but never backed up a one-way street and explained that in any event, Felton Street is a two-way street. He further testified that just prior to his left-hand turn, he struck a pothole and did not realize that he had a flat tire until he was in the middle of the block on Felton Street, at which time he instinctively began looking for a place to pull over. He proceeded for about 300 yards and arrived at a point where he could pull over when Officer Hellings pulled up behind him and another police cruiser pulled in front of him. According to Williams, a few seconds after he stopped, Officer Hellings hit the vehicle from behind, pushing it into two parked cars. He stated that two officers emerged from the vehicle in front of him and one from the rear vehicle, each brandishing his weapon. At that point, Williams put his hands over his head and exited the vehicle.

Williams denied consuming alcohol before driving, except that he admitted to having one glass of wine 13 or 14 hours prior, before he went to sleep around 2:00 p.m. the prior day. He denied failing to identify himself or provide his license, stating that he instructed the officers that his license was in the center console. He also denied driving at a high rate of speed or that his front, right tire was shredded, stating instead that it remained on its rim.

Bridget Ali, the female passenger who was in the vehicle with Williams at the time he was pulled over on March 16, 2014, also testified on his

8

behalf. She stated that Williams picked her up from a baby shower she was attending in the Overbrook neighborhood of Philadelphia around midnight, driving a vehicle she owned, after which the two went through a McDonald's drive-thru. Williams was heading back to Ali's house, driving down Jefferson Street, when they noticed that the road was blocked off near the 6300 block due to police activity. She recalled that as Williams made a left-hand turn onto either Felton or 61st Street, he struck a pothole, resulting in a flat tire. She stated that he never put the vehicle into reverse or backed up.

Ali also testified that as they continued down the block after making the left-hand turn, police cruisers appeared in front of and behind them, with the latter hitting the vehicle they were in and pushing its driver's side into two parked cars. Although the back of the vehicle did not sustain damage, the car was totaled as a result of its contact with the two parked cars. She stated that an officer got out of the vehicle, stood in front of them with his gun pointed, and instructed them to get out of the vehicle. She testified that Williams did not have an odor of alcohol and walked normally when he exited the vehicle.

Finally, Kevin Sullivan, a third-party witness to the incident, testified on behalf of Williams. He stated that on the morning in question, he was walking from a work garage on Felton Street toward Lansdowne Avenue when he heard the subject vehicle approaching due to its flat tire and saw it slowing down to a stop. He observed a police cruiser come from behind the vehicle, cut it off and pull in front of it and then watched another police vehicle travelling quickly pull behind the subject vehicle and rear-end it, causing it to collide into a couple of parked

9

cars. At this time, Sullivan was across the street, approximately 30 to 60 feet away.

He recalled that the officers from the front vehicle exited it, drew their guns and instructed Williams to get out of the car. Williams complied, placing his hands in the air and stating, "It's only a flat. Please don't shoot." (*Id.* at 72.) Sullivan did not speak to any of the officers after the incident but did provide Ali his phone number on a slip of paper in the event she had any problems.

In rebuttal, the Department recalled Officer Hellings who reiterated that the two parked cars were damaged when Williams collided with them upon being pulled over and that their vehicles made contact only when Williams reversed into the police cruiser. He further explained that because there was no damage to his police cruiser and because the scene did not qualify as an "accident" but rather was incidental, he was not required to report it to AID.

**III.**

Following the hearing, the trial court denied the appeal, crediting Officer Hellings's testimony that Williams exhibited bloodshot eyes, that there was a strong odor of alcohol on Williams's breath, and that there was no contact between the police cruiser and the vehicle operated by Williams until after Williams struck the two parked cars and then reversed. Specifically, the trial court emphasized:

> It is difficult to understand how Officer Hellings'[s] police vehicle could have struck the vehicle that Mr.

10

> Williams was operating hard enough to push it into two parked cars without causing any damage to either the front of the police vehicle or the rear of the vehicle being operated by Mr. Williams.

(5/21/15 Trial Court Opinion, at 6.) Further, the trial court determined that the police did not block the road but rather, Williams reversed his vehicle and made a sudden left-hand turn on a flat tire because he could not afford another DUI. The trial court concluded that these facts alone constituted reasonable grounds for believing that Williams was operating the subject vehicle under the influence of alcohol. Regardless, the trial court also found that Williams was travelling down Felton Street at a high rate of speed but it did not credit the testimony that Williams's balance was unstable. This appeal followed.[6]

## IV.

On appeal,[7] Williams challenges the trial court's finding that the Department established reasonable grounds to request a chemical test.

---

[6] The trial court granted Williams supersedeas pending disposition of his appeal to this Court.

[7] Our review in license suspensions cases is limited to determining whether the trial court's findings are supported by competent evidence, whether errors of law were committed, or whether the trial court committed an abuse of discretion in making its determination. *Gregro v. Department of Transportation, Bureau of Driver Licensing*, 987 A.2d 1264, 1267 n.2 (Pa. Cmwlth. 2010). In cases where the Department suspends a driver's license for refusal to submit to chemical testing, the Department must prove: 1) that the licensee was placed under arrest for driving under the influence of alcohol by a police officer who had reasonable grounds to believe that he was operating or was in actual physical control of the movement of the vehicle while under the influence of alcohol; 2) that he was requested to submit to chemical testing; 3) that he was informed that a refusal to submit to such testing would result in a suspension of his operating privileges; and 4) that the licensee refused to submit to the test. *Id.* at 1267 n.3.

11

"Reasonable grounds exist when a person in the position of the police officer, viewing the facts and circumstances as they appeared at the time, could have concluded that the motorist was operating the vehicle while under the influence of intoxicating liquor." *Banner v. Department of Transportation, Bureau of Driver Licensing*, 737 A.2d 1203, 1207 (Pa. 1999). Specifically, Williams argues that the trial court's finding is not supported by substantial evidence because it is premised upon the factual findings that Williams's eyes were bloodshot, that his breath had an odor of alcohol, and that he collided with two parked vehicles, which cannot provide reasonable grounds. Conversely, Williams emphasized that the trial court concluded that his balance was not impaired, that he was polite and well-spoken, that no field-sobriety tests were administered, and that his flat tire offers a non-alcohol-related explanation for the subsequent accident.

Based on the facts credited by the trial court, we find that the Department did satisfy its burden of establishing reasonable grounds. The trial court determined that when Williams approached Officer Hellings, he was driving on a flat tire which made a loud, grinding noise against the pavement. He then placed his vehicle in reverse upon observing Officer Hellings because he could not afford another DUI. He proceeded to make a left-hand turn, still driving on the flat tire, and continued down the block at a high rate of speed. When the officers pulled him over, Williams struck two parked cars with the driver's side of the vehicle. He then backed up and struck the police cruiser. When Williams exited the vehicle, his eyes were bloodshot and a strong odor of alcohol emanated from his breath.

These facts are more than sufficient to establish reasonable grounds to believe that Williams was operating the subject vehicle under the influence of alcohol. *See Department of Transportation, Bureau of Traffic Safety v. Doyle*, 520 A.2d 917, 919 (Pa. Cmwlth. 1987) (holding that reasonable grounds existed where a police officer testified that a motorist was involved in an accident and had a strong odor of alcohol on his breath); *Department of Transportation, Bureau of Driver Licensing v. Johnson*, 518 A.2d 8, 10 (Pa. Cmwlth. 1986) (finding reasonable grounds where a motorist was involved in an accident, had a strong odor of alcohol on his breath, had glassy eyes, and was swaying); *Department of Transportation, Bureau of Driver Licensing v. O'Neill*, 514 A.2d 1008, 1009–10 (Pa. Cmwlth. 1986) (determining that a motorist's involvement in an accident and the odor of alcohol on his breath "would allow a reasonable person in the position of the police officer" to conclude that reasonable grounds existed). Moreover, there is no requirement that a motorist be administered a field-sobriety test. *O'Neill*, 514 A.2d at 1009.

Further, to the extent Williams emphasized Sullivan's eyewitness testimony, it is not within our province to make credibility determinations or reweigh the weight of the evidence. Indeed, these duties rest exclusively with the trial court. *Reinhart v. Department of Transportation, Bureau of Driver Licensing*, 954 A.2d 761, 765–66 (Pa. Cmwlth. 2008).

Accordingly, because competent evidence of record supports the trial court's finding that reasonable grounds existed to believe that Williams was

operating a motor vehicle under the influence of alcohol, the trial court's decision denying Williams's appeal is affirmed.

_____
DAN PELLEGRINI, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Myron Williams,                         :
                    Appellant          :
                                        :
        v.                              :
                                        :
Commonwealth of Pennsylvania,           :
Department of Transportation,           :
Bureau of Driver Licensing             :   No. 2048 C.D. 2014

# **O R D E R**

AND NOW, this 23<u>rd</u> day of October, 2015, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is affirmed.

_____
DAN PELLEGRINI, President Judge